# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALEC TONSETH, individually, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-16-248-R |
| | ) | |
| POST OAK-UCAL, LLC, d/b/a | ) | |
| POST OAK APARTMENTS, and | ) | |
| UNIVERSITY COMMUNITIES, LLC, | ) | |
| d/b/a POST OAK APARTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Post Oak-UCAL, LLC, D/B/A Post Oak Apartments, And University Communities, LLC, D/B/A Post Oak Apartments. Plaintiff responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id*. at 327. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

Plaintiff was injured when he fell from a balcony at the Post Oak Apartments in Norman, Oklahoma, on June 12, 2014. According to Plaintiff, which Defendants do not dispute, Plaintiff placed his arm on the railing of the balcony of his apartment while leaning against the railing to look for a friend. The railing gave way and caused Mr. Tonseth to fall to the ground below. It is undisputed that Mr. Tonseth had not been onto the balcony prior to that day, having only moved into the apartment a few days earlier. It is also undisputed that his fiancé, who moved in a few days prior to his occupancy, had

not noticed anything amiss with the railing. Similarly, Defendants had noticed nothing wrong. Defendants contend they inspect each apartment between occupancies, but do not maintain records of such inspections and any resultant maintenance, nor do they have knowledge of which maintenance employee inspected unit 1825, the unit occupied by Mr. Tonseth and his fiancé. Defendants contend they are entitled to summary judgment because they owed no duty to warn Mr. Tonseth of the unknown hazard, and similarly, that they had no duty to repair such hazard absent knowledge of the defect. Defendants further contend that Plaintiff's claims are based on speculation and barred by Oklahoma's statute of repose.

In *Miller v. David Grace, Inc.*, 212 P.3d 1223 (Okla. 2009), the Oklahoma Supreme Court adopted "the view embraced by other jurisdictions which imposes a general duty of care upon landlords to maintain the leased premises in a reasonably safe condition, including areas under the tenant's exclusive control or use." *Id.* at 1225 In *Miller*, in accordance with the directive of her landlord, the tenant inspected her unit and found the balcony railing was loose, which she reported on more than one occasion. Although Miller was aware the balcony railing was missing a screw and not properly adhered to one wall, she was unaware that it was missing anchors on the other side and that the flooring was cracked where the railing should have been attached. The balcony railing gave way when Miller placed her hand thereon and leaned forward. In considering the district court's decision to grant summary judgment to the defendant, the Supreme Court noted the elements of a negligence claim, which requires proof that defendant owed a duty of care to plaintiff, which defendant breached, thereby causing the plaintiff's

3

injuries. *Id.* at 1227. The court also concluded that *caveat emptor* is no longer the appropriate standard for assessing the duty of a landlord to a tenant, noting that its prior jurisprudence had the "end result of discourage[ing] repairs and reward[ing] inattentive landlords the immunity from suit while impeding a tenant's recovery for a landlord's utter disregard for a tenant's health, safety, and welfare." *Id.* at 1228. The court imposed a new standard, a duty that "requires a landlord to act reasonably when the landlord knew or **reasonably should have known** of the defective condition and had a reasonable opportunity to make repairs." *Id.* at 1230 (emphasis added).

In the instant case there is no dispute that Plaintiff lacks evidence that Defendants had actual knowledge of any defect in the balcony railing. Rather, Plaintiff seeks to avoid summary judgment by arguing that if Defendants had conducted a proper inspection of the railing, they would have known about the defect and the potential for injury and could have fixed the issue before his fall. Although Defendants contend that each apartment is inspected between vacancies, they maintain no records of such inspections nor did Defendants produce evidence of which of its employees conducted any such inspection in Plaintiff's unit. In an effort to shift the blame to Plaintiff's then-fiancé, who completed the Apartment Condition Form, Defendants argue that Ms. Adkins did not identify any issues with the balcony railing when she completed the form on June 2, 2014, so as to provide them with notice. However, review of the form reveals that there is no specific space for the tenant to review the balcony area of the apartment or to indicate any issues therewith. Rather, the form is divided into sections by rooms and makes no mention of

4

the balcony. Accordingly, Defendants cannot rely on Ms. Adkins' failure to identify the issue to relieve themselves of any obligation.

The parties present conflicting expert testimony. According to Ronald White, P.E., Plaintiff's expert, the screw attaching the horizontal railing of the balcony to the vertical jamb "probably fell out previous to the accident. Otherwise, if it came out during the failure, it probably would not have fallen straight down but would have been thrown outward and then it would have fallen to the ground below. When Mr. Tonseth pushed against the guardrail, with the left attachment gone, the right attachment screw was pried out of the jamb member and then the guardrail system fell outward, allowing Mr. Tonseth to fall through to the ground below." [Plaintiff's Ex. 4]. Defendants present a report from J. Stephen Ford, P.E. Ford's opinion is premised largely on the custom and habit of Defendants to inspect each apartment between tenants, to include inspection of the balcony railing. He opines, in part:

> The hypothesized failure mechanism associated with the missing south (left) screw would suggest a twist or rotation of the guardrail assembly about a vertical axis as it pivoted around the north (right) screw attachment to the jamb channel. There is no visible sign in the available photographs of such a movement. Instead the photographs appear to indicate that the guardrail assembly rotated about a horizontal axis through the screw attachments of the bottoms of the pickets and the sill channel. This condition suggests instead that both the south (left) and the north (Right) screw attachment were in place and that both failed almost simultaneously when sufficient force was applied to the guardrail.

[Defendant's Ex. 8]. William Coleman, Consulting Metallurgical Engineer for Defendants, opines that "[t]here is no engineering or scientific basis for concluding that the patio balcony was in a state of disrepair prior to Mr. Tonseth's accident." He further

5

opines that "[n]o evidence has been discovered that lack of maintenance by the defendant Post Oak Apartments either caused or contributed to the accident." [Defendants Ex. 9]. In short, although neither of Defendants' experts proffers an explanation of exactly why the railing failed, both believe it was nothing that Defendants were aware of or could have reasonably known about prior to Mr. Tonseth's injury. Given the conflicting opinions of the experts and the absence of definitive evidence of inspection of the railing between tenants, the Court finds that a reasonable jury could conclude that if Defendants properly inspected the balcony prior to habitation of the apartment by Plaintiff, it would have uncovered and fixed the railing. Defendants' contention that Plaintiff's claims are based entirely on speculation is without merit. Plaintiff has provided an expert who has rendered an opinion regarding the undisputed failure of the railing, and the Court declines Defendants' invitation to conclude that Plaintiff's claim fails because it is based on speculation and conjecture.

Finally, Defendants argue that Plaintiff's claims must fail under Oklahoma's statute of repose, Okla. Stat. tit. 12 § 109.

> No action in tort to recover damages
> (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
> (ii) for injury to property, real or personal, arising out of any such deficiency, or
> (iii) for injury to the person or for wrongful death arising out of any such deficiency,
> shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

Okla. Stat. Ann. tit. 12, § 109 (West). Section 109 "sets an outer boundary in time beyond which no cause of action may arise for conduct that would otherwise have been actionable." *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 915, 919 (1989). If Plaintiff's claim related to the original construction and design of the balcony railing system, his claims would be so barred. However, his claim is premised on the Defendants' alleged failure to maintain the balcony railing, and accordingly, § 109 does not bar his claim. *See Smedsrud v. Powell*, 61 P.3d 891 (Okla. 2002); *Abbott v. Wells*, 11 P.3d 1247 (Okla.Civ.App. 1999).

For the reasons set forth herein, Defendants' Motion for Summary Judgment is hereby DENIED.

IT IS SO ORDERED this 22nd day of November, 2016.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE